IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

SEPHONIA COWANS

          Plaintiff,                               OPNION AND ORDER

                                                                 16-cv-324-wmc
     v.

UNITED STATES OF AMERICA,

          Defendant.
_____

This federal lawsuit stems from a state court action that plaintiff Sephonia Cowans filed in Washburn County Small Claims Court against defendant Cora Schultz, former Director of the Spooner area USDA Rural Development Office. As Schultz was a federal employee at the time, the defendant removed the action to this court and substituted the United States of America as the sole defendant under the Federal Tort Claims Act ("FTCA") § 2671, et seq. Specifically, section 2679(b)(1) provides that the United States shall be the defendant in any suit "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [her] office or employment".[1]

In her small claims complaint, plaintiff alleges that Schultz intentionally made false statements to the Spooner Police Department to cause plaintiff's wrongful arrest and incarceration. While plaintiff also alleges that Schultz mishandled plaintiff's loan

---

[1] When the court granted defendants' substitution motion, plaintiff did not object, and only challenged it in opposing defendants' motion to dismiss.

1

with the Rural Development Office, slandered plaintiff and misrepresented information related to her loan to both plaintiff and others, her complaint primarily seeks damages related to the seven days plaintiff alleges that she was wrongfully incarcerated in the Polk County Jail.

Pending before the court for some time is the government's motion to dismiss for failure to state a claim upon which relief can be granted. For the following reasons, the court will convert this motion to a motion for summary judgment and grant it.

ALLEGATIONS OF FACT[2]

Cowans received a mortgage and construction loan from the Spooner USDA Rural Development Office ("Office"), where Cora Schultz served as the director. Cowans became dissatisfied with multiple aspects of the Office's service related to her loan. As an initial matter, the Office improperly debited her bank account for a mortgage payment that she already made. The Office also failed to follow procedure to ensure that the contractor in receipt of Cowan's loan was properly credentialed. When the same contractor then allegedly failed to perform satisfactory work, Cowans claims that Schultz declined to investigate or try to recoup the $4,110.00 paid to him and responded with resistance and hostility to Cowans' own attempts to investigate. In particular, Schultz

---

[2] In addressing any pro se litigant's complaint, the court reads the allegations generously, reviewing them under "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 521 (1972). For purposes of this order, the court accepts all well-pled allegations in Cowans' complaint as true. In addition, following defendant's motion to dismiss, plaintiff filed two supplemental affidavits in which she expands on the factual bases for her allegations. In reply, defendant does not dispute those averments, acknowledging that the court may convert its motion while declining an opportunity to develop the factual record further under Rules 12(a) and 56. Accordingly, the court also accepts the factual assertions in plaintiffs' other filings for purposes of deciding defendant's motion.

allegedly: (1) made derogatory comments to Cowans and actively tried to prevent contractors from working with her; (2) falsely told contractors that they could not receive advance payment for costs until the job was complete; and (3) tried to discourage contractors from working with Cowans by telling them that she was a drunk and drug addict.

According to Cowans, Schultz further threatened her over the phone on April 27, 2010. Later that day, the Polk County Sheriff's Department arrested Cowans. She was held in the Polk County Jail, based on statements that Schultz had made to the police regarding Cowans "threaten[ing] to blow up Rural Development." (Compl. ¶ 1, dkt. #1-1.) Cowans was released after seven days.

The criminal complaint and police report filed in *State v. Sephonia T. Cowans*, describe the lead-up to her arrest in greater detail. Washburn Co. Case No. 2010-CM-97.[3] According to statements recited in the report, Cowans began calling the Rural Development Office multiple times a day and threatening employees. In particular, Cowans reportedly called the Office on the morning of April 28, 2010,[4] and she told a secretary, Jocelyn Ford, that she was on her way to Spooner and was going to "kick [her] ass." The report further indicates that the responding officer spoke to Schultz, who

---

[3] Even were this motion not converted into one for summary judgment, it would be appropriate for the court to consider the police report and criminal complaint from plaintiff's April 2010 arrest. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) (noting that the court may, on a motion to dismiss, consider documents which are referenced in and are central to a plaintiff's complaint).

[4] Plaintiff's complaint notes the date of the incident as April 27, 2010, while the criminal complaint indicates that it was April 28, 2010.

informed the officer that she was concerned because Cowans "had once made the comment to her that she had driven by her home, and asked her if her residence was insured." Schultz also indicated that she had received many calls from Cowans regarding her home loan.

In supplemental affidavits submitted in response to defendants' motion, Cowans avers further that she continued to investigate the status of her loan after she was released from Polk County Jail, including by attempting to involve a newspaper and other USDA offices, but was thwarted by Schultz's behavior at the Spooner Office. Cowans states that Schultz led her to believe that she was working on recouping the wrongfully paid portion of her loan up until the time of her retirement. As a result, the construction portion of Cowans' loan allegedly remained unused for four years, despite her desire and attempts to use it, and she never received full access to all of the approved funds in her loan.

OPINION

If "[m]atters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). To prevent surprise, district courts normally give the parties notice upon conversion of a motion to dismiss to a motion for summary judgment. *See Burick v. Edward Rose & Sons*, 18 F.3d 514, 516 (7th Cir. 1994). However, such notice is unnecessary where, as here, there is no actual surprise and no disputed material facts are represented or appear to exist. *Id.*

Construed broadly, plaintiff's complaint and affidavits assert claims for false imprisonment, slander, and intentional misrepresentation related to her loan. Taking all of plaintiff's factual allegations in her complaint and supplemental affidavits as true, defendant is entitled to judgment as a matter of law as to each of these claims. Fed. R. Civ. P. 56(a) (summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law"). Specifically, dismissal is appropriate because the United States has not waived its sovereign immunity for these claims, and as to each claim, Schultz was acting within the scope of her employment.[5]

While the FTCA waives the United States' sovereign immunity for claims arising from acts committed by federal employees, 28 U.S.C. § 1346(b)(1), that waiver is not absolute. Instead, the statute sets forth exceptions to which the waiver does not apply, including "any claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or

---

[5] Defendants also argue that all of plaintiff's claims are time-barred. While it appears that plaintiff's false imprisonment and tortious inference claims are time-barred, her intentional misrepresentation claim is not. Under Wis. Stat. § 893.57, an action arising from an intentional tort, including slander or false imprisonment, must be brought within three years of accrual of the claim. Because plaintiff's false imprisonment was readily discoverable at the time it occurred, the claim accrues from the date that it occurred: May 5, 2010. While plaintiff argues that equitable estoppel applies because Schultz told her that she was trying to "fix" her loan, Schultz retired from the Office in May 2012, and plaintiff still waited another four years to file this lawsuit. Thus, Wis. Stat. § 893.57 bars any action related to the false imprisonment against both the government *and* against Schultz personally. Section 893.57 bars plaintiff's slander claim for the same reason, having accrued in May of 2010. Plaintiff's intentional misrepresentation claim is a different matter, since a six-year statute of limitation applies for an action based on fraud. Wis. Stat. § 893.93(b). While plaintiff's allegations about Schultz's misrepresentations are vague at best, they appear to have taken place, at the latest, in May of 2012, and thus it is not apparent that this claim is time-barred. However, the court need not address this claim further in light of its ruling on defendant's claim to sovereign immunity above.

interference with contract rights." 28 U.S.C. § 2680(h). Therefore, plaintiff's claims for false imprisonment, slander, and misrepresentation against the United States are barred by sovereign immunity.

Ultimately, plaintiff does not dispute this. Rather, she asserts that these claims were intended to be against Schultz in her personal capacity, rather than against the United States, because Schultz was not acting within the scope of her employment and that plaintiff should therefore be able to proceed. While the U.S. Attorney for the Western District asserted otherwise in certifying that Schultz was acting within the scope of her employment at the time of the incident giving rise to this suit, certification alone is not conclusive: "when a review of the scope certification is requested, as it was here, the district court should give de novo review to determine whether certification was proper." *Hamrick v. Franklin*, 931 F.2d 1209, 1211 (7th Cir. 1991).

Even ignoring plaintiff's failure to object to the certification until responding to defendant's motion to dismiss, she still has the burden of proving that the employee's conduct fell outside the scope of employment. *Humrick*, 931 F.2d at 1211. Here, the defendant contends that "even accepting the allegations of the complaint as true, [Schultz] acted within the scope of [her] employment," so the court can determine whether certification is appropriate "on the face of the complaint (akin to a motion to dismiss)." *Taboas v. Mlynczak*, 149 F.3d 576, 580-81 (7th Cir. 1998). Alternatively, if defendant "contests the facts as pled," the certification issue "may be decided by reference to affidavits and other evidence outside the pleadings (akin to a summary judgment motion)[.]" *Id.* at 581. Finally, if there are disputed factual issues, "the district

6

court may hold an evidentiary hearing to resolve material factual disputes related to the scope of employment." *Id.*

Because there appears to be no disputed facts, defendant focuses on the first of these alternatives: even accepting the allegations in Schultz's complaint and the factual assertions in her affidavits as true, plaintiff cannot show that Schultz acted outside the scope of her employment. In Wisconsin, an employee acts outside of the scope of her employment when her conduct is "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Olson v. Connerly*, 156 Wis. 2d 488, 457 N.W.2d 479, 483 (1990) (quoting *Finsland v. Phillips Petroleum Co.*, 57 Wis. 2d 267, 204 N.W.2d 1, 276 (1973)). "[A]n employee may be found to have acted within the scope of his employment as long as the employee was at least partially actuated by a purpose to serve the employer." *Id.* To determine whether the employee was "actuated by a purpose to serve the employer," the court must consider the employee's intent. *Id.* "There is no requirement that serving the employer must be the employee's only purpose or even the employee's primary purpose." *Id.* at 500.

Schultz's conduct certainly satisfies two of *Olson's* three considerations. Speaking to a police officer regarding a client's threats to multiple employees surely falls within the kind of conduct that Schultz was authorized to perform in her role as director of the Spooner Rural Development Office, as does speaking with clients regarding loans and contractors regarding potential projects. Likewise, the alleged incidents occurred at the

Rural Development Office during business hours -- "the authorized time and space limits."

An arguably closer inquiry is whether Schultz intended to serve her employer, which can be difficult to determine on the face of the complaint alone. In Wisconsin, "'normally, the scope-of-employment issue is presented to the jury because it entails factual questions on an employee's intent and purpose.'" *Doe v. County of Milwaukee*, No. 14-CV-200-JPS, 2016 WL 7017375 at *11 (E.D. Wis. 2016) (quoting *Block v. Gomez*, 201 Wis. 2d 795, 549 N.W.2d 783, 787 (1996)). However, presentation to a jury is not necessary where there is no genuine issue of material fact. *Id.*; *see also Block*, 549 N.W.2d at 805-07 (finding that it was appropriate for the trial court to determine the scope-of-employment issue as a matter of law where the evidence presented supported only one conclusion).

Even the face of the complaint here indicates that Schultz intended, at least in part, to serve her employer. In particular, plaintiff alleges that Schultz sought her false imprisonment as a means to "intimidate [her] into silence" and to "discourage" her from continuing to investigate the mishandling of her loan. (Compl. ¶¶ 9, 20, dkt. # 1-1.) Plaintiff does *not* allege that Schultz personally benefited from suppressing discovery of the loan's mismanagement, financially or otherwise. Rather, she contends that the Office failed to follow "proper protocol and procedures," and Schultz's subsequent actions were attempts to discredit, discourage and intimidate plaintiff from uncovering those failings. Even assuming any mismanagement would not reflect well on Schultz personally, the

alleged actions Schultz took, however improper, also appear to have been taken for the benefit of the Spooner Rural Development Office.

Any remaining doubt is resolved by plaintiff's own supplemental affidavit, which alternates between referring to Schultz and the USDA in alleging fraud and mismanagement. For example, she claims that the USDA wrongfully issued the check to a contractor, the USDA did not follow protocol and generally that the USDA improperly handled the loan. (Pl.'s Aff. ¶¶ 11, 13, 49, 50 dkt. # 13.) While plaintiff specifically alleges that "Cora Schultz . . . tried to bully me into taking responsibility for the mess that USDA created" (*id.* at ¶ 47), both the complaint and particularly the supplemental affidavits treat the actions of Schultz and the USDA as essentially indistinguishable. This unity of action and purpose leaves only one reasonable conclusion: Schultz's alleged actions here were taken at least in part to serve her employer.

Plaintiff's argument that Schultz's actions fall outside the scope of her employment because they were intentional and malicious is equally unavailing. Under Wisconsin law, the scope of employment includes acts "so closely connected with what the servant is employed to do . . . that they may be regarded as methods, *even though quite improper ones*, of carrying out the objectives of the employment.'" *Cameron v. City of Milwaukee*, 102 Wis. 2d 448, 307 N.W.2d 164, 169 (1981) (quoting Prosser, Law of Torts (4th ed.) pg. 460-61) (emphasis added); *see also Javier v. City of Milwaukee*, 670 F.3d 823, 829-30 (7th Cir. 2012) (finding that under Wisconsin law, a police officer's behavior was not automatically outside of the scope of employment because it was criminal or tortious). Moreover, the FTCA applies to suits arising from "negligent or

wrongful acts or omissions" by government employees, thereby including intentional acts. 28 U.S.C. § 2679(b)(1). Accordingly, plaintiff's assertion that Schultz's actions were intentional and malicious is not enough to place them outside the scope of her employment.

Thus, because the facts alleged in the complaint, particularly as supplemented by plaintiff's additional affidavits, compel a finding that Schultz acted within the scope of her employment, and because the United States has not waived its sovereign immunity under the FTCA for any of plaintiff's claims, they are barred.

ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss for failure to state a claim upon which relief can be granted (dkt. # 6) is converted to a motion for summary judgment.

2) Defendant's motion for summary judgment is GRANTED.

3) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 13th day of September, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge